## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                                          No. 20-CR-717 WJ

MANUEL HUMBERTO BOLIVAR,

     Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER

THIS MATTER IS BEFORE THE COURT on Defendant's Motion for Revocation of Detention Order (**Doc. 18**).  The Court, having reviewed Parties' briefing and considered the applicable law, concludes that a hearing is not necessary to resolve the issues presented.  *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019) (explaining that the Court may hold a hearing, but that a hearing is not required).  Resolving the matter on the briefs after consulting all the documents available in the record, the Court finds that the Motion is not well taken and is therefore, **DENIED**.

## BACKGROUND

Defendant is charged with possession of methamphetamine with intent distribute, possession of fentanyl with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and possession of a machinegun.  (Doc 1.)  Following a hearing, the Magistrate Judge ordered Defendant detained pending trial, concluding that Defendant is a flight risk and a danger to the community.  (Doc. 8 at 37:8–10.)  Defendant now seeks revocation of that Order.

## DISCUSSION

### I.       The detention factors of 18 U.S.C. § 3142(g) weigh against Defendant.

Defendant appeals the Magistrate Judge's Order of Detention, pursuant to 18 U.S.C. §

3145(b).[1]  The Court reviews the detention order *de novo*.  *United States v. Cisneros,* 328 F.3d

610, 615 (10th Cir. 2003).  "A defendant may be detained pending trial if a judicial officer finds

that no condition or combination of conditions will reasonably assure the appearance of the person

as required and the safety of any other person and the community." *United States v. Mobley*, 720

F. App'x 441, 443–44 (10th Cir. 2017) (citing 18 U.S.C. § 3142(e)(1)).  Under 18 U.S.C. § 3142(g),

the court must consider four factors as part of the evaluation: "(1) the nature and circumstances of

the offense charged"; "(2) the weight of the evidence against the person"; (3) "the history and

characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or

the community that would be posed by the person's release."  "The government bears the burden

of proving risk of flight by a preponderance of the evidence and dangerousness to any other person

or the community by clear and convincing evidence." *Mobley*, 720 F. App'x at 443–44 (internal

citations omitted).

A rebuttal presumption arises that no condition or combination of conditions will

reasonably assure the appearance of the defendant as required, nor reasonably assure the safety of

the community, if there is probable cause to believe the defendant committed certain offenses,

including firearms offenses under 18 U.S.C. § 924(c) and offenses for which a maximum term of

imprisonment of ten years or more is prescribed by the Controlled Substances Act.  *See* 18 U.S.C.

§ 3142(e)(3).  Application of the presumption does not end the Court's inquiry; the burden of

---

[1] Technically, Defendant's Motion cited 18 U.S.C. § 3146(b), which deals with punishments for failure to appear upon being released pending further judicial proceedings.  *See* Doc. 18 at 1.  Given the substance of the motion, the Court assumes this was simply a typographical error.

production then shifts to the defendant.  *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991).  But "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."  *Id.*   Even if a defendant successfully rebuts the presumption, it continues to hold some weight.  *Id.* at 1355.

Here, the Court concludes, as the Magistrate Judge did, that the § 3142(g) factors weigh against Defendant.  The Court addresses each factor in turn.

### A.       Nature and Circumstances of the Offense Charged

Following an FBI raid, law enforcement seized over three pounds of methamphetamine, 96 fentanyl tablets, 8.75 pounds of marijuana, 155 strips of suboxone, nearly $16,000 in cash, five firearms (two of which were stolen), a Glock full-auto selector switch, ballistic vest, various high-capacity firearms magazines, and hundreds of rounds of ammunition from Defendant's residence. (Doc. 1 at 3.)  The FBI case agent, Bryan Acee, testified that the methamphetamine, fentanyl, Glock switch, and four firearms were found in Defendant's bedroom.  (Doc. 11 at 9:10–10:25). Defendant confirmed which bedroom was his.  (*Id.* at 8:5–6; 25:9–11).  Defendant admitted where the drugs could be found (*id.* at 10:15–16) and that he had the firearms for protection (*id.*at 13:17– 19).  Agent Acee further testified that the quantity of drugs "far exceed[ed]" personal use amounts and was consistent with drug trafficking.  (*Id.* at 11:20–21.)

As a threshold matter, based on the sheer quantity of evidence seized from Defendant's residence and the testimony at the probable cause hearing, the Court concludes that there is probable cause to believe Defendant committed the offenses charged, thus the presumption of § 3142(e)(3) applies.  Tellingly, Defendant's Motion does not address this factor, nor dispute the serious nature of the offenses charged.  Given the circumstances presented at the hearing and the significant charges Defendant faces, the Court has no trouble concluding the nature of the offenses

charged is quite serious.  *See* Section 3142(g)(1) (when considering the nature and circumstances of the offense charged, the Court should consider whether the crime involves controlled substances or firearms; this case involves both).   Accordingly, the first factor weighs in favor of the Government.

### B.      Weight of the Evidence

The evidence in this case consists principally of the firearms and drugs seized.  Defendant challenges the weight of the evidence by arguing that there were a number of people living at the raided residence and that the Glock switch was found outside of the bedroom Defendant shared with his girlfriend.  Defendant contends that this creates "constructive possession issues as to all pending counts." (Doc. 24 at 1.)

Defendant's attempt at disputing the weight of the evidence is unpersuasive.  The amount of drugs, firearms, and cash, and the fact that Defendant directed law enforcement where in the house the drugs could be found, coupled with his admission that he kept firearms for protection, are sufficient for this Court to find in favor of the Government on this factor.  Defendant may indeed have valid defenses (Doc. 24 at 2), and there may be possession issues that will be ripe for motions practice later on, but in terms of weight of the evidence, the evidence on the record so far weighs heavily in favor of the Government.

### C.      History and Characteristics

In evaluating this factor, courts look to the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." § 3142(g)(3)(A).  Additionally, Courts consider

whether, at the time of the instant offense, the defendant was on probation, parole, or other release pending trial, sentencing, or appeal.[2]  § 3142(g)(3)(B).

Defendant argues that his history and characteristics show that he is not a flight risk or danger to the community.  Defendant works full time for his father's construction company and is the primary financial providers for multiple family members, including his mother and his girlfriend.  (Doc. 18 at 3.)  He has no prior convictions and limited criminal history.  (*Id.* at 3.)  He was not on probation or parole at the time of his arrest.  (*Id.*)  Agent Acee testified that Defendant was "cooperative and easy to deal with" during the duration of the FBI raid.  (Doc. 11 at 7:11–12.)  Defendant claims to have no significant financial resources which would permit him to flee.  (Doc. 18 at 4.)

The Government concedes that Defendant has limited criminal history, but argues that because he is only 21 years old, his lack of criminal history is not necessary significant.  (Doc. 11 at 32:23–33:2.)  The Government further argues that a defendant can be a danger to the community, even to a community to which he has strong ties.  (Doc. 20 at 5.)  Additionally, the Government contends that the penalties Defendant faces are strong incentive to flee, even if he has no history.  (*Id.*).

Given Defendant's minimal criminal history, his family ties to the state, and his full-time job, the Court concludes that this factor weighs in favor of Defendant.

### D.    Nature and Seriousness of Danger to Community if Defendant is Released

Drug trafficking offenses, especially those involving firearms, are inherently dangerous.  "[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within

---

[2] This consideration is part of the history and characteristics factor of § 3142(g) and not, as Defendant argues here, an independent factor.  (*See* Doc. 18 at 2 (erroneously listing whether the defendant was on probation or parole as the four factor, rather than nature and seriousness of the danger to the community that would be posed by a defendant's release)).

Congress' definition of 'danger.'" *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). "The

statutory language, as well as the legislative history, unequivocably [sic] establishes that Congress

intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775

F.2d 504, 506 (3rd Cir. 1985). Indeed, Congress was keenly aware of the dangerousness of drug

trafficking when passing the Bail Reform Act of 1984:

> The concept of defendant dangerousness is described throughout this chapter by
> the term "safety of any other person or the community." The reference to safety of
> any other person is intended to cover the situation in which the safety of a particular
> identifiable individual, perhaps a victim or witness, is of concern, while the
> language referring to the safety of the community refers to the danger that the
> defendant might engage in criminal activity to the detriment of the community. The
> Committee intends that the concern about safety be given a broader construction
> than merely danger of harm involving physical violence. . . . The Committee also
> emphasizes that the risk a defendant will continue to engage in drug trafficking
> constitutes a danger to the "safety of any other person or the community."

S.Rep. at 12-13, 1984 U.S. Code Cong. & Adm. News, 3195. Additionally, the lethality of fentanyl

and scourge of methamphetamines and opioids on this community further demonstrate the serious

danger Defendant's release could pose. In this case, given the sheer quantity of drugs and guns

seized, the Court believes it is likely that Defendant would resume trafficking. Put another way,

the Court believes there is no condition or combination of conditions that will ensure the

community's safety from this trafficking operation.

## II.    Defendant's COVID-19 argument is not based on particularized risk and is therefore, unpersuasive.

Defendant also asserts the COVID-19 pandemic grounds for why he should not be held in

detention. Although there is limited caselaw on this issue, many courts that have considered it

have concluded that a defendant is not entitled to release or transfer based solely on generalized

COVID-19 fears and speculation. Rather, courts make individualized determinations as to each

defendant, which includes whether COVID-19 concerns present compelling reasons to warrant a

defendant's release or transfer.  *See United States v. Clark,* 2020 WL 1446895, at *3 (D. Kan. 2020). Generalized  allegations and conclusory statements about possible exposure to or spread of COVID-19 do not meet the criteria for extraordinary and compelling reasons.  *United States v. Eberhart,* 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).

Here, even accepting that COVID-19 presents a heightened risk to defendants in pretrial detention in the broad sense, Defendant fails to explain how this risk is specific and particularized to him.  *See United States v. Harris*, 2020 WL 1503444, at *5 (D.D.C. Mar. 27, 2020) (holding, in the context of pre-sentencing detention, that COVID-19 is only one factor to be considered, and that courts "must still determine whether there is clear and convincing evidence that the person is not a risk of flight and will not pose a danger to the community."); *see also Eberhart*, 2020 WL 145075, at *2 (declining to release a defendant on similar grounds, and noting that the institution where the defendant was housed did not have any reported cases of the virus).  Defendant has not presented evidence that there are any COVID-19 cases at the Santa Fe County Detention Center ("SFCDC"), where he is currently held.  Even if an inmate does test positive, Defendant has not presented any evidence that, should cases occur there, SFCDC is not equipped or prepared to handle an outbreak.  To the contrary, SFCDC apparently has plans and measures in place.  (*See* Doc. 23-1.)

"[A]s concerning as the COVID-19 pandemic is, resolving an appeal of an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act, 18 U.S.C. § 3142(g)." *United States v. Hearns*, 2020 WL 1493747, at *4 (N.D. Ohio Mar. 27, 2020).  "The existence of the [COVID-19] pandemic, without more, is not tantamount to a 'get out of jail free' card." *United States v. Williams*, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020); *see also United States v. Jai Montreal Winchester*, 2020 WL 1515683, at *12

(M.D.N.C. Mar. 30, 2020) (declining to release a defendant pre-sentence because his arguments "applie[d] equally to every detainee in detention").

## CONCLUSION

As discussed above, the § 3142(g) detention factors weigh against Defendant. Specifically, the only factor in Defendant's favor was his history and characteristics, while all the other detention factors weight heavily against him.[3] Coronavirus notwithstanding, the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. Additionally, Defendant has not demonstrated a specific, particularized and articulable COVID-19 risk to him, and thus has not established a compelling reason for his release. *See* 18 U.S.C. § 3142(i). **THEREFORE**, for all the foregoing reasons, Defendant's Motion for Revocation of Detention Order (**Doc. 18**) is **DENIED.**

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Both in briefing and the hearing before the Magistrate Judge, the Government raised statements allegedly made by Defendant while he was in custody. The Government offered summaries of jailhouse calls prepared by law enforcement (Doc. 20-2) as well as a statement relayed to the Assistant U.S. Attorney by a transport officer (Doc. 11 at 33:6–10.) and argued that these statements indicate a desire or intent on the part of Defendant to flee. Defendant disputes the veracity of these statements, their foundation, and their lack of context. Because the Court is without a full transcript of the calls or testimony from the transport officer, it did not consider these statements in its analysis.